FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.

CASE NO. 8:21-cr-33T210 JSS

18 U.S.C. § 371

JAMES ROLAND JONES
   a/k/a "MillionaireMike"

## INFORMATION

The United States Attorney charges:

### COUNT ONE
(Conspiracy)

**A.   Introduction**

At all times material to this Information:

1. James Roland Jones ("JONES"), a/k/a "MillionaireMike," resided in Redondo Beach, California, within the Central District of California.

2. JONES's primary conspirator ("the Conspirator") resided in Lakeland, Florida, within the Middle District of Florida.

3. Website A was once the world's largest dark web marketplace. It facilitated the sale of illegal drugs, firearms, personally identifiable information ("PII"), stolen and fraudulent identification documents,

counterfeit goods, and malicious software and other computer hacking tools. JONES's username on Website A was "MillionaireMike."

### B. The Conspiracy

4. Beginning on an unknown date, but at least as early as in or around October 2016, and continuing through and nicluding the date of this Information, in the Middle District of Florida, Central District of California, and elsewhere, JONES did knowingly and willfully combine, conspire, confederate, and agree with the Conspirator and others known and unknown to the United States Attorney to commit securities fraud, in violation of 15 U.S.C. § 78j(b) and 78ff, and 17 C.F.R. § 240.10b-5 and 240.10b5-2.

### C. Manner and Means

5. The manner and means by which JONES and others sought to accomplish the conspiracy included, among other things, the following:

    a. It was a part of the conspiracy that JONES would and did purchase stolen personally identifiable information ("PII") on Website A, including names, addresses, dates of birth, and social security numbers.

    b. It was further a part of the conspiracy that JONES would and did use false and fraudulently obtained identities, including those purchased on Website A, to open and operate accounts for the purpose of conducting financial transactions based on material, non-public information

related to publically traded securities, more commonly known as "insider information."

    c.    It was further a part of the conspiracy that JONES and the Conspirator would and did obtain insider information for the purpose of effecting securities transactions.

    d.    It was further a part of the conspiracy that JONES and the Conspirator would and did conduct and cause others to conduct securities transactions based on insider information.

    e.    It was further a part of the conspiracy that JONES and the Conspirator would and did share in the proceeds of this conspiracy.

    f.    It was further part of the conspiracy that the conspirators would and did perform acts and make statements to hide and conceal and cause to be hidden and concealed the purpose of the scheme and artifice to defraud and the acts committed in furtherance thereof.

### D. Overt Acts

6.    In furtherance of the conspiracy and to affect the object thereof, the conspirators committed and caused to be committed the following overt acts, among others, in the Middle District of Florida and elsewhere:

    a.    On or about July 16, 2008, JONES opened a Scottrade brokerage account ending in -0649 ("the JONES Account").

b.     On or about March 8, 2017, the Conspirator opened a Scottrade brokerage account ending in -1522 ("the Conspirator Account").

c.     On an unknown date, but no later than on or about March 21, 2017, JONES gained access to the Conspirator Account.

d.     On or about April 9, 2017, an undercover employee working for the Federal Bureau of Investigation ("the Undercover Employee") provided JONES with purported material, non-public, merger information related to a publicly traded, U.S. company ("U.S. Company 1").

e.     On or about April 13, 2017, JONES and the Conspirator agreed to conduct a securities transaction based on the purported insider information related to U.S. Company 1.

f.     On or about the dates set forth below, each of which constitutes a separate overt act, a conspirator conducted and caused to be conducted the following securities transactions based on the purported insider information related to U.S. Company 1:

   i.     On or about April 18, 2017, the Conspirator Account purchased the option to purchase 2,500 shares of U.S. Company 1.

   ii.    On or about April 21, 2017, the Conspirator Account purchased the option to purchase 500 shares of U.S. Company 1.

   iii.   On or about April 21, 2017, the Conspirator

Account purchased the option to purchase 500 shares of U.S. Company 1.

       iv.      On or about April 25, 2017, the Conspirator Account purchased the option to purchase 500 shares of U.S. Company 1.

       v.      On or about April 26, 2017, the Conspirator Account purchased the option to purchase 500 shares of U.S. Company 1.

       vi.      On or about April 28, 2017, the JONES Account purchased the option to purchase 700 shares of U.S. Company 1.

       vii.      On or about May 3, 2017, the JONES Account purchased the option to purchase 400 shares of U.S. Company 1.

       viii.      On or about May 3, 2017, the JONES Account purchased the option to purchase 1,000 shares of U.S. Company 1.

       ix.      On or about May 4, 2017, the JONES Account purchased the option to purchase 1,000 shares of U.S. Company 1.

       g.      On or about June 6, 2017, the Undercover Employee mailed $5,000 to the Conspirator, who resided within the Middle District of Florida.

       h.      Beginning on an unknown date, but no later than on or about June 16, 2017, JONES possessed victim J.L.M.'s PII, including the name, address, date of birth, and social security number of J.L.M.

  i. On or about June 16, 2017, JONES gained control of a Capital One investment account ending in -9730, which had been fraudulently opened in the name of J.L.M. ("the J.L.M. Account").

  j. On or about June 16, 2017, $5,000 was deposited into the J.L.M. Account.

  k. On or about June 26, 2017, JONES sent a screenshot to the Undercover Employee purporting to show that the $5,000 provided by the Undercover Employee had been deposited into a brokerage account.

  l. On or about June 28, 2017, JONES agreed to use the $5,000 provided by the Undercover Employee to conduct a securities transaction based on insider information.

  m. On or about July 25, 2017, JONES revealed to the Undercover Employee that JONES had material, nonpublic, quarterly earnings information related to a publicly traded, U.S. company ("U.S. Company 2").

  n. On or about the dates set forth below, each of which constitutes a separate overt act, a conspirator conducted and caused to be conducted the following securities transactions based on the insider information related to U.S. Company 2:

   i. On or about July 14, 2017, the Conspirator Account purchased 1,900 shares of U.S. Company 2.

   ii. On or about July 14, 2017, the JONES Account purchased 7,200 shares of U.S. Company 2.

   iii. On or about July 14, 2017, the JONES Account purchased 1,400 shares of U.S. Company 2.

   iv. On or about July 14, 2017, the J.L.M Account purchased 1,000 shares of U.S. Company 2.

   v. On or about July 18, 2017, the J.L.M Account purchased 1,700 shares of U.S. Company 2.

   vi. On or about July 25, 2017, the Conspirator Account sold 1,900 shares of U.S. Company 2.

   vii. On or about July 25, 2017, the JONES Account sold 3,000 shares of U.S. Company 2.

   viii. On or about July 25, 2017, the JONES Account sold 36 shares of U.S. Company 2

   ix. On or about July 25, 2017, the JONES Account sold 1,000 shares of U.S. Company 2.

   x. On or about July 25, 2017, the JONES Account sold 988 shares of U.S. Company 2.

        xi.      On or about July 25, 2017, the JONES Account sold 3,564 shares of U.S. Company 2.

        xii.     On or about July 25, 2017, the JONES Account sold 12 shares of U.S. Company 2.

        xiii.    On or about July 26, 2017, the J.L.M Account sold 2,700 shares of U.S. Company 2.

    o.    On or about July 27, 2017, U.S. Company 2 publicly released its quarterly earnings, which were identical to the figures JONES provided to the Undercover Employee on or about July 25, 2017.

All in violation of 18 U.S.C. § 371.

## FORFEITURE

1. The allegations contained in Counts One of this Information are incorporated by reference as if fully set forth herein for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

2. Upon conviction of a conspiracy of the violation of 15 U.S.C. § 78ff, in violation of 18 U.S.C. § 371, the defendant,

                JAMES ROLAND JONES
                a/k/a "MillionaireMike,"

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

3. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property under the provisions of 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

MARIA CHAPA LOPEZ
United States Attorney

By: _____
Carlton C. Gammons
Assistant United States Attorney

By: _____
Amanda L. Riedel
Assistant United States Attorney
Deputy Chief, Criminal Division

9